Judith BURG, Plaintiff-Appellant,

v.

The GREAT ATLANTIC AND PACIFIC TEA COMPANY, a corporation, Defendant-Appellee.

No. 12270.

United States Court of Appeals Seventh Circuit.

June 5, 1958.

Theodore L. Forsberg, Chicago, Ill., for appellant.

William R. Jentes, Max E. Wildman, Kirkland, Fleming, Green, Martin & Ellis, Chicago, Ill., (Frank Dyer, Chicago, Ill., of counsel), for appellee.

Before MAJOR, SCHNACKENBERG and HASTINGS, Circuit Judges.

HASTINGS, Circuit Judge.

On July 14, 1954, appellant, Judith Burg, entered the store of appellee, The Great Atlantic & Pacific Tea Company, located at 5205 North Clark, Chicago, Illinois, for the purpose of making a purchase. Upon entering the store and while proceeding up an incline just beyond the entrance, she "slipped" and fell suffering personal bodily injuries for which she brought this suit for damages. The case was tried before a jury and, at conclusion of appellant's case, the district court directed a verdict for appellee (defendant) and entered judgment thereon. Appellant contends on this appeal that the district court erred in so doing.

The question thus presented for our consideration is whether there is any evidence in the record, together with all reasonable inferences to be drawn therefrom, which would justify submission of this case to the jury. The rule is that in a trial of issues of fact before a federal court and a jury, if "the evidence, with all the inferences that justifiably could be drawn from it," constitutes a sufficient basis for a verdict for the plaintiff or the defendant, as the case may be, then a motion for a directed verdict for the other party should be denied. Gunning v. Cooley, 1930, 281 U.S. 90, 92, 50 S.Ct. 231, 74 L.Ed. 720, and Slocum v.

New York Life Insurance Co., 1913, 228 U.S. 364, 369, 33 S.Ct. 523, 57 L.Ed. 879.

The evidence presented by appellant bearing on the mishap consisted of her own testimony, and that of Yvonne Harrison, who was in the store when appellant fell and suffered the injuries for which recovery is sought. It was stipulated that the incline on which the fall occurred amounted to a ten-inch rise in every 13 feet or a three-degree rise overall. The incline is some 18 feet long and the store floor including the incline was covered with an asphalt tile which was cleaned and waxed on the Sunday preceding the Wednesday on which the accident occurred. This asphalt tile floor covering had just recently been installed and was admittedly in good condition.

Appellant testified that she was quite familiar with the store, having shopped there for years. In entering the store one walks south for about five feet and then to the left up an incline. "I turned the corner", she stated, "just to go up this ramp [the incline] and I slipped and fell right on my face and with my arm under, and of course I was stunned." She indicated further that she "slipped going up" about at the center of the 18-foot long incline, that she felt herself going down, slipping, and she remembered nothing further until she regained consciousness in another part of the store. At that time she asked what she slipped on and, "Why was this so slippery?" She was informed by the assistant manager that the floor had been recently waxed. On cross-examination she testified that she saw no debris or foreign matter on the floor, that she didn't know or didn't have any idea what caused her to fall.

There was no other eyewitness to the fall. Yvonne Harrison, who was in the store at the time, heard appellant scream and saw her lying unconscious "near the top" of the incline. She testified that the floor looked freshly waxed.

Appellee contends that the trial court properly directed the verdict in its favor for two reasons each sufficient in itself. First, because there was no evidence of a causal connection between appellant's fall and the waxing of the floor and, second, because, as a matter of law, the mere waxing of floors, unless shown to have been improperly done, is not negligence.

■ The trial court during the course of the argument on appellee's motion for a directed verdict placed great emphasis on the lack of evidence of a causal connection indicating that: "Here is a woman who does not even say that she slipped. She said, 'I haven't any idea.' She had no idea what caused her to fall." The record indicates that appellant stated repeatedly that she slipped although on cross-examination she did say she had no idea what caused her to fall. No one saw what caused her to fall. The evidence shows an incline of some three degrees which one witness stated looked freshly waxed and which had been admittedly waxed three days prior to the incident. The testimony was further that there were scuffmarks on the waxed surface. It was not necessary for appellant to establish what actually caused her to fall if from the circumstances, as revealed by the evidence, it would be reasonable for a jury to infer that the fall was occasioned by the fact that the incline had been waxed. See Lindroth v. Walgreen Co., 1950, 407 Ill. 121, 94 N.E.2d 847, in which the Supreme Court of Illinois held that the evidence that a vaporizer had melted itself down was such a circumstance as could be the basis for the reasonable inference that there was a defect in such vaporizer which ultimately caused a fire[1]; and Holsman

1. The court also indicated that: "The argument of appellants that the melting was due to the heat of the fire and not that of the heating element in the vaporizer is likewise based on an inference, for there is no direct evidence to support it. A verdict may not be set aside merely because the jury could have drawn different inferences or because judges feel that other conclusions than the one drawn would be more reasonable." Lindroth v. Walgreen Co., 1950, 407 Ill. 121, 135, 94 N.E.2d 847, 854.

v. Darling State Street Corp., 1955, 6 Ill.App.2d 517, 128 N.E.2d 581, in which evidence that a white marble staircase was badly worn was held to be sufficient as the basis for a reasonable inference that a plaintiff's fall was caused by such a worn condition although there were no eyewitnesses and the plaintiff could not say what caused him to fall.[2]

 On the question of negligence, the trial court properly ruled that it is not negligence to apply wax to a floor unless there is some evidence that it was improperly done. Dixon v. Hart, 1951, 344 Ill.App. 432, 436, 101 N.E.2d 282, 284 and cases cited therein. See, also, Custer v. St. Clair Country Club, 1953, 349 Ill.App. 316, 320, 110 N.E.2d 697. Admittedly, the waxing of floors is too common a practice to constitute negligence in the absence of evidence tending to show some positive negligent act or omission. In the instant case the wax was applied to asphalt tile *on an incline*. The trial court discounted the incline as being too slight, admitting that if the slope had been steeper it might have constituted actionable negligence to wax its surface.[3] Such a determination, that is, whether a three-degree incline is so substantial that an application of wax on its surface evidences a lack of reasonable care on the part of the store owner, is, however, a factual determination which should be left to the jury.

We hold, therefore, that there was sufficient evidence in this case to require a submission of the issue of negligence to the jury, and that it was error for the trial court to direct a verdict for appellee (defendant) at the conclusion of appellant's case.

The judgment of the district court is reversed, and this cause is remanded for further proceedings not inconsistent with this opinion.

2. The plaintiff's evidence as to the fall was summarized by the court as follows: "On February 28, 1951, the plaintiff was descending from the 17th floor to the 16th floor, and he stepped from the platform onto the first tread with his right foot first. He then started to move his left foot to put it on the next tread below when 'something happened.' The plaintiff testified that to the best of his recollection 'I was going down and I recall very distinctly that I had put my right foot on the tread and that something happened when I undertook to step to the next tread with my left foot. There was some interference with my feet—whether I slipped or whether something else was going on—I can't imagine what it could be, but I can't remember

of slipping. I only remember that there was an interference there with the stepping. My left foot didn't go where it was intended to go, and in the rhythm of walking it didn't arrive.' Prior to the accident plaintiff had no trouble with his hips or feet, nor had a heart attack, fainting spell or dizzy spell. At the time of the occurrence plaintiff was 84 years old. He was 87 years old at the time of the trial when he testified." Holsman v. Darling State Street Corp., 1955, 6 Ill. App.2d 517, 520, 128 N.E.2d 581, 583.

3. The court in referring to the incline stated: "I am talking about the ramp aspect of this case. I would say if you had a 30-degree angle or a 25-degree angle, maybe 20 degrees, but here is a three degree slope."