MYRON EICHENGREEN, Plaintiff-Appellant, v. ROLLINS, INC., f/k/a Apollo Central Protection, Inc., Defendant-Appellee.

First District (6th Division)    No. 1—00—2579

Opinion filed September 21, 2001.

Andre & Diokno, of Itasca (Nicole A. Andre and Jose Miguel Diokno, of counsel), for appellant.

Clausen Miller, P.C., of Chicago (James T. Ferrini, Brian J. Riordan, and Ann C. Chalstrom, of counsel), for appellee.

PRESIDING JUSTICE GALLAGHER delivered the opinion of the court:

Plaintiff, Myron Eichengreen, brought an action alleging breach of contract and negligence against defendant, Rollins, Inc., f/k/a Apollo Central Protection, Inc., resulting from a fire at his residence. The trial court granted defendant's motion for summary judgment on both counts of the complaint. Plaintiff now appeals. We affirm.

In 1983, plaintiff purchased a residence at 100 Maple Hill Road in Glencoe, Illinois. At that time, the house included a security system that had been installed in 1980 by defendant Apollo. In 1985, plaintiff constructed a bathhouse at his property that could not be accessed through the residence, but did share one common wall with the house. The bathhouse contained a natural gas fueled water heater and a natural gas fueled barbeque grill affixed to an exterior wall. From the time of plaintiff's purchase of the residence until August 1988, defendant maintained the security system that was in place.

In August 1988, the parties entered into a contract, which is now the subject of this lawsuit. Specifically, on August 16, 1988, defendant Apollo submitted a letter, for plaintiff's approval, containing an estimate of work to be done. The original letter listed the following items: one digital dialer transmitter; one smoke detector; five heat

detectors—replace; one temperature switch—45°; one heat detector—electrical room; one fire horn; one fire signal; and one building temperature signal. The letter also listed a price of $675 as the amount for the items as installed and additionally provided that the terms were one-half down, balance upon completion. It is undisputed that this letter became the final written contract between the parties. Plaintiff did not sign the letter, but it is further undisputed that plaintiff made the several handwritten modifications and additions contained in the letter changing the original terms proposed by defendant. Plaintiff crossed out the "temperature switch" and "fire horn" items. Plaintiff changed the "installed" price from $675 to $575 and added the notation "battery incl." Plaintiff also added the term "$287.50 plus 100 for #2414 battery 8/22/88." In addition, plaintiff inserted the following provision: "system to be in good working order and guaranteed for at least 12 months." The system was installed sometime shortly after the letter was exchanged.

On September 13, 1995, a fire occurred at plaintiff's home. The fire originated in the bathhouse in the area of the grill. The fire activated the burglar alarm at plaintiff's residence. When police officers responded to the alarm, they noticed the southeast wall of the home engulfed in flames. The police then summoned the fire department. By the time the fire department arrived, plaintiff and his wife had already exited the residence.

On December 5, 1997, plaintiff filed a two-count verified complaint against defendant. Count I alleged breach of contract. Count II alleged negligence. On March 25, 1999, defendant filed a motion for summary judgment. After full briefing and two hearings, the trial court granted defendant's motion for summary judgment in its entirety. Plaintiff appeals the trial court's grant of summary judgment.

■ In appeals from summary judgment, this court conducts a *de novo* review. *Boub v. Township of Wayne*, 183 Ill. 2d 520, 524, 720 N.E.2d 535, 537 (1998). Summary judgment is properly granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607 N.E.2d 1204, 1209 (1992). We may affirm summary judgment based on any grounds supported by the record. *City of Chicago v. Michigan Beach Housing Cooperative*, 297 Ill. App. 3d 317, 327, 696 N.E.2d 804, 812 (1998).

## Count I: Breach of Contract

On appeal, plaintiff argues that the trial court erred in granting summary judgment on plaintiff's breach of contract claim because an issue of material fact existed regarding the "intent" of the parties.

Plaintiff contends that the "intent" of the parties was for the installation of a new security system that would provide protection for plaintiff's entire premises. Plaintiff does not rely on the terms of the written agreement in support of his assertion of the parties' intent. Instead, plaintiff contends that "[h]e informed [defendant] that he wanted the security of having the entire home protected." Thus, plaintiff asks this court to consider extrinsic evidence of the parties' prior negotiations in determining the intent of the parties. He further relies on extrinsic evidence as support for the reasonableness of his subjective belief that the parties intended to enter into a contract for protection of the entire premises.

Defendant counters that the August 16, 1988, letter stands unchallenged as the only and entire agreement between the parties. As such, defendant asserts, the terms of that letter, alone, represent the intentions of the parties.

■■ A proper analysis of this case begins with a review of the established guidelines of contract interpretation under Illinois law. It is well settled that a court, when construing a contract, should ascertain the intent of the parties and give effect to that intent. *In re Marriage of Olsen*, 124 Ill. 2d 19, 25-26, 528 N.E.2d 684, 687 (1988). As the Illinois Supreme Court has further explained:

> "Traditional contract interpretation principles in Illinois require that:
>> '[a]n agreement, when reduced to writing, must be presumed to speak the intention of the parties who signed it. It speaks for itself, and the intention with which it was executed must be determined from the language used. It is not to be changed by extrinsic evidence.' [Citation.]" *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 462, 706 N.E.2d 882, 884 (1999).

The *Air Safety* court noted that this approach has been referred to as the "four corners" rule. *Air Safety*, 185 Ill. 2d at 462, 706 N.E.2d at 884. The "four corners" rule has been described as related, although not identical, to the parol evidence rule. *Coplay Cement Co. v. Willis & Paul Group*, 983 F.2d 1435, 1438 (7th Cir. 1993). The parol evidence rule has been explained as follows: "[The parol evidence] rule generally precludes evidence of understandings, not reflected in a writing, reached before or at the time of its execution which would vary or modify its terms." *J&B Steel Contractors, Inc. v. C. Iber & Sons, Inc.*, 162 Ill. 2d 265, 270, 642 N.E.2d 1215, 1217 (1994). "Under the parol evidence rule, extrinsic or parol evidence concerning a prior or contemporaneous agreement is not admissible to vary or contradict *a fully integrated writing*." (Emphasis added.) *Geoquest Productions, Ltd. v. Embassy Home Entertainment*, 229 Ill. App. 3d 41, 44, 593

N.E.2d 727, 730 (1992). A party may not introduce parol or extrinsic evidence to show additional consistent terms of a contract unless the writing is incomplete or ambiguous. *Geoquest Productions*, 229 Ill. App. at 44-45, 593 N.E.2d at 730.

■ In *Air Safety*, the court considered the applicability of what has been referred to as the provisional admission approach. Under the provisional admission approach, in contrast to the four corners rule or the parol evidence rule, "although the language of a contract is facially unambiguous, a party may still proffer parol evidence to the trial judge for the purpose of showing that an ambiguity exists which can be found only by looking beyond the clear language of the contract." *Air Safety*, 185 Ill. 2d at 463, 706 N.E.2d at 885. Based upon the facts of the case before it, the court expressly declined to formally adopt the provisional admission approach. *Air Safety*, 185 Ill. 2d at 464, 706 N.E.2d at 885 ("This court, however, has never formally adopted the provisional admission approach, and we decline to do so today because the contract in the case before us contains an explicit integration clause"). In a footnote, however, the court stated as follows: "We expressly decline to rule on whether the provisional admission approach may be applied to interpret a contract which does not contain an integration clause until such a case is squarely before the court." *Air Safety*, 185 Ill. 2d at 464 n.1, 706 N.E.2d at 886 n.1. Thus, the *Air Safety* court confirmed the continued viability of the four corners rule in cases where a contract is facially unambiguous *and contains an express integration clause. Air Safety*, 185 Ill. 2d 457, 706 N.E.2d 882.

The contract at issue here does not contain an integration clause. Nevertheless, citing *Air Safety*, defendant contends that this court should apply the four corners rule and decide that the terms of the August 16, 1988, letter alone represent the intentions of the party. Defendant further asserts that the letter constitutes the entire contract between the parties. Plaintiff has not directly challenged defendant's contention that the contract is a final and complete expression of the parties' intent. Instead, in arguing that a genuine issue of material fact exists regarding the parties' intent, plaintiff does not address the contract principles we have outlined but, rather, presupposes that extrinsic evidence may be considered. Plaintiff takes no position on the applicability of the four corners rule or parol evidence rule in the present case with respect to the issue of ascertaining the parties' intent.

■ In *J&B Steel Contractors*, the Illinois Supreme Court specifically considered the issue of "whether evidence beyond a writing itself may be considered in determining its completeness for purposes of the parol evidence rule." *J&B Steel Contractors*, 162 Ill. 2d at 267, 642

N.E.2d at 1217. No integration clause was identified in the contract at issue in *J&B Steel Contractors*, which consisted of a purchase order. Based upon the nature of the document and the court's discussion on the issue of integration, we can assume no integration clause existed. The court acknowledged that "[t]he more modern approach favors liberalizing the admission of evidence to determine the integration question." *J&B Steel Contractors*, 162 Ill. 2d at 271-72, 642 N.E.2d at 1219, citing J. Calamari & J. Perillo, Contracts § 3—3, at 111 (2d ed. 1977). Nonetheless, the court reaffirmed the rule stated in *Armstrong Paint & Varnish Works v. Continental Can Co.*, 301 Ill. 102, 106, 133 N.E. 711 (1921), that only the subject writing may be considered to determine the integration question.[1] *J&B Steel Contractors*, 162 Ill. 2d at 271, 642 N.E.2d at 1218-19.

Sound policy reasons exist for this rule. The *Armstrong* court explained the rationale for the rule as follows:

"When parties sign a memorandum expressing all the terms essential to a complete agreement[,] they are to be protected against the doubtful veracity of the interested witnesses and the uncertain memory of disinterested witnesses concerning the terms of their agreement, and the only way in which they can be so protected is by holding each of them conclusively bound by the terms of the agreement as expressed in the writing. All conversations and parol agreements between the parties prior to the written agreement are so merged therein that they can not be given in evidence for the purpose of changing the contract or showing an intention or understanding different from that expressed in the written agreement. [Citation.]" *Armstrong Paint & Varnish Works v. Continental Can Co.*, 301 Ill. at 106, 133 N.E. at 713.

As the *Armstrong* court further noted:

"[T]he contentions of the parties to the contract are not the criteri[a] which should guide the court in determining whether the written contract is a full expression of the agreement of the parties. The court must determine this from the writing itself. If it imports on its face to be a complete expression of the whole agreement,—that is, contains such language as imports a complete legal obligation,—it is to be presumed that the parties introduced into it every material item and term, and parol evidence cannot be admitted to add another term to the agreement although the writing contains nothing on the particular term to which the parol evi-

---

[1]The court noted, however, that this rule applied in those cases which were not governed by the Uniform Commercial Code (UCC) (810 ILCS 5/1—101 *et seq.* (West 1994)). *J&B Steel Contractors*, 162 Ill. 2d at 271, 642 N.E.2d at 1218.

dence is directed." *Armstrong Paint & Varnish Works v. Continental Can Co.*, 301 Ill. at 106, 133 N.E. at 713.

The *J&B Steel Contractors* court, after stating that, generally, a writing's completeness as measured against it remains a legal question to be determined by the trial judge (*J&B Steel Contractors*, 162 Ill. 2d at 272, 642 N.E.2d at 1219), went on to determine the integration question. The court noted that the contract in question, the purchase order, specifically referred to a telephone proposal that was to be incorporated into the contract and therefore determined that the contract was clearly, on its face, incomplete. *J&B Steel Contractors*, 162 Ill. 2d at 274-75, 642 N.E.2d at 1220-21. Thus, the parol evidence rule did not preclude the plaintiff "from offering proof of terms allegedly agreed to during the telephone proposal that [were] consistent with and would supplement, but not contradict, the purchase order." *J&B Steel Contractors*, 162 Ill. 2d at 275, 642 N.E.2d at 1221.

█ Thus, our assessment of whether the parol evidence rule applies so as to exclude any extrinsic evidence depends upon a preliminary determination that the August 16, 1988, letter was a complete integration of the parties' agreement. See *J&B Steel Contractors*, 162 Ill. 2d at 270, 642 N.E.2d at 1218; see also *Pecora v. Szabo*, 94 Ill. App. 3d 57, 63, 418 N.E.2d 431 (1981) (noting that the threshold question for the application of the parol evidence rule is whether a writing is integrated, *i.e.*, whether it was intended by the parties to be a final and complete expression of the entire agreement); accord *Oldenburg v. Hagemann*, 207 Ill. App. 3d 315, 326, 565 N.E.2d 1021 (1991). The terms contained within the four corners of the August 16, 1988, letter indicate that the parties intended that defendant provide the specifically enumerated services for the stated price as proposed by the defendant. Unlike the purchase order in *J&B Steel Contractors*, the letter makes no mention of any outside proposal nor does it contain any references whatsoever to any additional discussions. The contract contains a list of particular items to be replaced or added to an existing security system. The contract contains no provision that required defendant to place heat sensors or smoke detectors specifically within the bathhouse or to provide security for the entire premises. The contract contains no reference at all to the provision of protection of plaintiff's entire premises. We conclude that the written contract here, on its face, constituted a final and complete integration of the parties' agreement. Thus, the August 16, 1988, letter is the only and entire agreement between the parties. Any particular interpretation that only the plaintiff may have envisioned at the time a contract is executed is immaterial. *American States Insurance Co. v. A.J. Maggio Co.*, 229 Ill. App. 3d 422, 427, 593 N.E.2d 1083, 1086 (1992). This court

will not add another term about which an agreement is silent. *American States Insurance Co.*, 229 Ill. App. 3d at 427, 593 N.E.2d at 1086.

Plaintiff has failed to present any evidence that defendant breached the contract. Defendant complied with the written contract terms by providing to plaintiff the system that was outlined in the letter. The system in place at the time of the fire worked properly and as it was designed to work on the day of the fire. The trial court properly granted summary judgment as to count I of plaintiff's complaint.

## Count II—Negligence

Plaintiff further alleged that defendant owed a duty to plaintiff to place heat sensors in the areas of the house containing a possible ignition source or to inform plaintiff of the risks involved with leaving such an area unprotected so that plaintiff could make an informed decision as to whether to waive such protection. Plaintiff asserts that the trial court erred in granting summary judgment in favor of defendant by ruling that defendant did not owe a duty of care to plaintiff.

■ An allegation of negligence based upon a contractual obligation, although sounding in tort rather than contract, is nonetheless defined by the contract. *Ferentchak v. Village of Frankfort*, 105 Ill. 2d 474, 480-81, 475 N.E.2d 825-26 (1985); *Melchers v. Total Electric Construction*, 311 Ill. App. 3d 224, 228, 723 N.E.2d 815, 818 (1999). Thus, the scope of duty is determined by the terms of the contract. *Ferentchak*, 105 Ill. 2d at 480-81, 475 N.E.2d at 826. A defendant's duties will not be expanded beyond the scope of duties required by the contract. *Ferentchak*, 105 Ill. 2d at 480-81, 475 N.E.2d at 825-26; *Kotarba v. Jamrozik*, 283 Ill. App. 3d 595, 598, 669 N.E.2d 1185, 1188 (1996); see also *Dyduch v. Crystal Green Corp.*, 221 Ill. App. 3d 474, 478-79, 582 N.E.2d 302, 306 (1991) ("Where a defendant is charged with negligence because of his failure to perform an act allegedly required by contract, the question of whether the defendant actually had a duty to perform the act usually must be determined from the terms of the contract, and the defendant's duty will not be extended beyond the duties described by the contract"); *American States Insurance Co. v. A.J. Maggio Co.*, 229 Ill. App. 3d 422, 426, 593 N.E.2d 1083, 1085-86 (1992) ("Where a defendant is charged with negligence because of his failure to perform an act allegedly required by contract, the question whether the defendant had a duty to perform the act is determined by the terms of the contract. [Citation.] The defendant's duties will not be expanded beyond the scope of the duties described in the contract").

■ Whether a duty exists in a particular case is a question of law for the court to determine. *Calhoun v. Belt Ry. Co. of Chicago*, 314 Ill.

App. 3d 513, 517, 731 N.E.2d 332, 336 (2000). Thus, defendant's duties, determined as a matter of law, were established by the contract's terms. A defendant is not liable under a negligence theory for failure to perform acts outside the scope of the contract. Plaintiff freely negotiated the contract. Plaintiff cannot now attempt to create additional duties that were not negotiated or expressed at the time of the contract.

■ Plaintiff's allegations of negligence in his complaint mirror his allegations for breach of contract and provide that "it was the duty of the defendant to provide a security system to plaintiff sufficient to provide protection for his entire home, including the pool house attached to the main portion of the residence." Plaintiff alleged that defendant breached its duty because defendant:

"(a) failed to provide a security system sufficient to provide protection for the entire Eichengreen residence;

(b) failed to provide a security system with heat sensors or smoke detectors near the pool house, which was attached to the main portion of the Eichengreen home;

(c) provided a system that was below the 'industry standard' at the time that the system was installed, failing to provide adequate protection for the home; and

(d) failed to provide a heat detector or smoke detector in the pool house, given the absence of protected material in the common wall which would stop a fire from spreading to the main portion of the home."

These allegations exceed the scope of defendant's contractual undertaking. The August 16, 1988, letter provides that defendant would "replace" five heat detectors and install one heat detector in the electrical room. Plaintiff did not allege that defendant failed to install or improperly installed the system as it was delineated in the August 16, 1988, letter.

Plaintiff further alleged in his complaint that it was defendant's duty to "provide a security maintenance system which would properly forward a fire alarm to the fire department" and that defendant "was negligent in the security maintenance agreement" by:

"(a) failing to repair the security system, even though a service call was conducted on August 8, 1995;

(b) failing to repair the security system, even though a service call was conducted on August 11, 1995; and

(c) allowing the security system to remain in a defective and broken condition, such that the fire alarm was improperly routed to the police department."

Summary judgment in favor of defendant was appropriate because defendant had not contractually undertaken any of the duties alleged by

plaintiff. Moreover, no evidence was presented by plaintiff that defendant breached any of the duties it did undertake. Nor did plaintiff present any evidence that the system did not function properly or that there were any "defects." Although a plaintiff is not required to prove his case at the summary judgment stage, he must present *some* evidentiary facts in support of his cause of action. *Calhoun v. Belt Ry. Co. of Chicago*, 314 Ill. App. 3d at 517, 731 N.E.2d at 336. The trial court properly granted summary judgment as to count II of plaintiff's complaint.

In accordance with the foregoing, the order of the circuit court of Cook County granting defendant's motion for summary judgment as to counts I and II of plaintiff's complaint is affirmed.

Affirmed.

O'BRIEN and O'MARA FROSSARD, JJ., concur.